[No. 7860.   Department One.   July 12, 1909.]

JAMES T. WOODDY *et al.*, *Appellants*, v. BENTON WATER COMPANY *et al.*, *Respondents*.[1]

VENDOR AND PURCHASER—REMEDIES OF VENDEE—DAMAGES—DEFICIENCY IN AREA—ACCEPTANCE OF DEED.  A vendee can recover damages for a deficiency in the area of land conveyed, where the contract of purchase called for sixty acres of land out of a larger tract owned by the vendors, without other description; and mere acceptance of a deed conveying an irregular tract by metes and bounds does not bar a recovery, as the vendee could assume that it conveyed the quantity called for.

SAME—FRAUD OF VENDOR—FALSE REPRESENTATIONS—CAVEAT EMPTOR.  The principal of *caveat emptor* does not apply, and it is error to grant a nonsuit in an action by a vendee for damages by reason of false representations, where it appears that the defendants represented that the sixty acres of land sold was so situated that it could all be irrigated by gravity from their canal; that over 28 acres was above the level of the canal and could not be so irrigated, which fact could only be ascertained by an accurate survey and was known to defendants, who had made the survey, and was unknown to the plaintiff; the modern tendency being to restrict the doctrine of *caveat emptor* which has no application if facts are peculiarly within the other party's knowledge, although not exclusively so; such representations being actionable or at least making a case for the jury.

[1]Reported in 102 Pac. 1054.

Appeal from a judgment of the superior court for Benton county, Zent, J., entered June 6, 1908, upon granting a non-suit, after a trial before the court and a jury, in an action by a vendee to recover damages for fraud. Reversed.

*C. O. Anderson, O. R. Holcomb,* and *C. L. Holcomb,* for appellants.

*Henry J. Snively,* for respondents.

Rudkin, C. J.—On the 3d day of November, 1906, the plaintiffs and the defendant The Benton Water Company entered into a written contract wherein the water company agreed to exchange sixty acres of land, with a perpetual water right for irrigation purposes, situate in Benton county, for one hundred and fourteen acres of farming lands situate in Whitman county. The lands of the plaintiffs were particularly described in the contract by references to the government surveys, but the only description given of the water company's lands was the following: "All that part of the Northeast quarter of section twenty-three, township nine, North range twenty-eight E. W. M., in Benton county, Washington, lying E of the county road as now laid out and S and against the canal, necessary to make 60 A. of land." On the 17th day of December, 1906, pursuant to this contract the water company purported to convey to the plaintiffs the 60 acres and the water right in Benton county, under the following description:

"Commencing at a point on the north line of Section Twenty-three Township nine North Range Twenty-eight EWM. 483 feet westerly from the Northeast corner of said section which corner is a stone marked X, thence running along said section line north 89° 37' west 1035.00 feet, thence South 2° 7' west 1645.5 feet, thence South 89° 53' East 2194.65 feet, thence North 11° 12' East 209.9 feet to the center of the Benton Water Company's lateral Number 3, thence along the center line of said lateral North 76° 16' west 381.8 feet, thence south 80° 40' West 208.10 feet, thence North 52° 33' West 88.60 feet to the North line of lot one (1) Section

Twenty-four township Nine North Range twenty-eight EWM., thence along said North line North 89° 28′ west 33 feet, thence North 00° 49′ East 72.10 feet to center line of said lateral Number 3, thence along said center line North 22° 37′ West 150.25 feet, thence North 32° 44′ West 458.10 feet, thence North 15° 49′ West 332.4 feet, thence North 9° 37′ West 415.20 feet to place of beginning, excepting a strip for canal right of way purposes 20 feet wide, measured at right angles from the above center line of said lateral Number 3 containing sixty acres more or less;"

and the plaintiffs in turn conveyed the Whitman county property to the defendant Munsey at the instance of his co-defendants. This action was instituted to recover damages for false representations made by the defendants in the negotiations leading up to the contract of sale, both as to the quantity of land to be conveyed and the number of acres susceptible of irrigation from the water company's canal by gravity flow.

The complaint alleged, and the testimony on the part of the plaintiffs tended to show, that the defendants represented that the tract to be conveyed by the water company contained 60 acres in all, and that the 60 acres was so situated with relation to the water company's canal that the entire tract could be irrigated therefrom by gravity flow; that in fact the tract contained only 52.64 acres, and 28.24 acres of this was above the level of the canal and could not be irrigated therefrom; that before entering into the contract the plaintiff James T. Wooddy visited the land, accompanied by certain of the defendants, and viewed the premises in a general way; that the fact that portions of the land could not be irrigated from the canal could only be ascertained by an accurate survey; that the defendants had caused such survey to be made and knew that portions of the tract could not be irrigated from the canal, that this fact was unknown to the plaintiffs, etc.

At the close of that portion of the plaintiffs' testimony disclosing the circumstances under which the exchange of

property was made, the court directed a nonsuit, and from the judgment of nonsuit this appeal is prosecuted. We are at a loss to know upon what theory the court denied a recovery for the deficiency in the quantity of land which the respondents agreed to convey in exchange for the lands conveyed by the appellants. If we should assume that a purchaser must at his peril ascertain the quantity of land in a given tract with fixed and definite boundaries, before entering into a contract of purchase, and this is an extreme view to take, it would not avail the respondents in this case, for here the contract of purchase called for sixty acres of land out of a larger tract, without other or further description, and the appellants had no means of measuring or otherwise ascertaining the quantity of land to be conveyed until the boundaries were fixed and defined in their deed. They had a right to assume that the quantity of land conveyed by the deed corresponded with the contract, and are not barred from a recovery for a deficiency by the mere acceptance of the deed. The respondents agreed to convey 60 acres of land, they breached their contract and the appellants are entitled to recover damages for the breach, regardless of oral representations made at the time of sale.

Nor can we agree with the court below that the doctrine of *caveat emptor* applies to the representations made by the respondents to the effect that the entire tract was under the level of the canal and susceptible of irrigation therefrom. Strong language has been used by this and other courts in defining the duties of purchasers from which it might be inferred that vendors have an unbridled license to lie and deceive, but such has never been the law, and the tendency of the more recent cases has been to restrict rather than extend the doctrine of *caveat emptor*. Thus in *Strand v. Griffith*, 97 Fed. 854, the court said:

"There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negli-

gence, and refuses them redress, whenever they fail to act upon that presumption. The fraudulent vendor cannot escape from liability by asking the law to applaud his fraud and condemn his victim for his credulity. 'No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.' "

In *Noyes v. Belding*, 5 S. D. 603, 59 N. W. 1069, the court said:

"The unmistakable drift is towards the doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim."

See, also, *Watson v. Molden*, 10 Idaho 570, 79 Pac. 503, and cases there cited. In 14 Am. & Eng. Ency. Law (2d ed.), pp. 120, 121, the rule is thus stated:

"By the overwhelming weight of authority, ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself. By the weight of authority, and in reason the rule that a person who is voluntarily blind as to facts concerning which false representations are made cannot complain of the same, applies only where the parties have equal present opportunity and means to ascertain the truth at the time of the transaction, and does not apply merely because it is possible to ascertain the facts. Indeed, it has been held that a person is justified in relying on a representation made to him, in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth."

In *McMullen v. Rousseau*, 40 Wash. 497, 82 Pac. 883, this court said:

"The main contention of the appellants is that this case comes within the rule often announced by this court that, where the vendor and purchaser are dealing at arm's length, and where the subject-matter of the sale is at hand, the pur-

chaser must protect himself and cannot rely upon representations made by the vendor. This rule is firmly established where the representations relate to the subject-matter of the sale which is at hand, or to other facts the truth of which may readily be ascertained by the exercise of ordinary care and prudence. But the converse of this rule is equally well established where the subject-matter of the sale is not at hand, so that the truth or falsity of the representations concerning it may be ascertained, or where the representations relate to facts within the knowledge of one of the parties, and the truth or falsity of such representations cannot be ascertained by the other party upon reasonable investigation or by the exercise of reasonable care and prudence. Such are the cases of *O'Connor v. Lighthizer*, 34 Wash. 152, 75 Pac. 643; *Mulholland v. Washington Match Co.*, 35 Wash. 315, 77 Pac. 497; *Stack v. Nolte*, 29 Wash. 188, 69 Pac. 753, and *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559."

Within this rule we think the representations made by the respondents were actionable, or at least that it was a question for the jury to say whether the appellants acted with that degree of prudence and circumspection which would mark the conduct of a reasonably prudent man under like circumstances. All the cases agree that the purchaser may rely upon representations of the vendor where the property is at a distance, or where for any other reason the falsity of the representations are not readily ascertainable; and we think the representations as to location of the land in relation to the canal were of this class, or at least that the jury might have so found. For these reasons the court erred in granting the nonsuit, and the judgment is reversed with directions to award a new trial.

FULLERTON, GOSE, and MORRIS, JJ., concur.

CHADWICK, J., concurs in the result.