[No. 9128. Department One. April 14, 1911.]

## J. L. BEECHER, *Respondent*, v. PETER WILSON *et al.*, *Appellants*.[1]

VENDOR AND PURCHASER—FRAUD—EVIDENCE—SUFFICIENCY—CAVEAT EMPTOR. The rule of *caveat emptor* does not apply, and the vendee may recover damages for fraud in the sale of a shingle mill, where the evidence shows that the vendors employed gross deception to induce the sale, representing that the boiler was in first-class working condition and had never given any trouble, that when the property was inspected the boiler was fired up, and packed with stable manure in order to operate it at all, that it could not then be examined, or subjected to test without considerable expense, and that in fact the boiler had given constant trouble and was unfit for use and dangerous to operate.

VENDOR AND PURCHASER—FRAUD—DAMAGES—MEASURE—INTEREST. Upon the sale of a shingle mill through false representations concerning the boiler, which was in fact unfit for use and a loss to the vendee at the time of the sale, the vendee is entitled to offset against a note given for the balance of the purchase price the actual damage suffered, with interest from the date of the sale, at the rate prescribed in the note to evidence the indebtedness.

Appeal from a judgment of the superior court for Snohomish county, Canfield, J., entered March 16, 1910, upon findings in favor of the plaintiff, notwithstanding the verdict of a jury in favor of the defendants, in an action to foreclose a mortgage. Reversed.

*Hathaway & Alston*, for appellants.

*Cooley & Horan*, for respondent.

[1]Reported in 114 Pac. 899.

FULLERTON, J.—The appellants purchased of the respondent a shingle mill, consisting of certain buildings and machinery, and a leasehold interest in certain land on which the buildings containing the machinery were constructed. The purchase price agreed upon for the property was $4,000, all of which was paid in cash at the time of the purchase, except the sum of $1,800, to secure which a mortgage was executed upon the property by the purchasers. The purchasers subsequently paid the sum of $800 on the mortgage, but refused to pay anything more thereon, whereupon the present action was begun to foreclose the mortgage.

The complaint was in the usual form in such cases. The answer admitted the execution of the mortgage, but set out as a counterclaim that the boiler, being a part of the property purchased from the respondent, was old, worn, and leaky, incapable of being repaired, and totally unfit to be used for the purposes for which it was purchased, or for any purpose whatsoever; that the appellants were compelled to discard it because of its condition, and compelled to install a new one in its place, to their cost and damage in the sum of $912.50. They further alleged that, at the time of making the purchase, the respondent represented and warranted the boiler to be sound and in good repair, when in truth and in fact he well knew the condition of the boiler, and that his representations concerning the same were false. The reply put in issue the affirmative matter in the answer, and on the issue made, a trial was had before the court and a jury, which resulted in a verdict of the jury to the effect that the appellants were entitled to an offset against the balance claimed to be due on the mortgage of $535.65. The court, however, disregarded the findings of the jury, and made findings of its own to the effect that, while the respondent had made false representations concerning the condition of the boiler, the appellants, at the time they purchased the property, had an opportunity to examine the boiler; that they were experienced mill men; and that an inspection of the boiler by them would

have disclosed its condition. The court thereupon concluded that the rule of caveat emptor applied, and that the respondent was entitled to foreclose the mortgage for the full purchase price. A decree was entered accordingly, and this appeal taken therefrom.

The evidence discloses that the grossest kind of deception was practiced by the respondent in order to induce a sale. The boiler was fired up and the mill in operation at the several times the appellants examined the property prior to its purchase by them. The boiler in that condition could not be examined minutely and it was made a special subject of inquiry by the appellants. In answer to these inquiries, the respondent assured them that the boiler was in first-class working condition; that it had been subjected to a test of one hundred and fifty pounds cold water pressure; and that he had never had any trouble with it. The truth was that the boiler had been giving trouble all of the time; that it was so far old, worn and leaky that it could not be operated at all when in a natural condition, and that the respondent to operate it at all had been compelled to pack it with stable manure.

Furthermore, the appellants were compelled to discard the boiler at once, not only because it was unfit for use, but because an attempt to use it was dangerous to the operators working in the mill.

These facts warrant a different judgment from that entered by the trial court. The purchase made by the appellants was not a purchase in market overt. It is not even an ordinary case of bargain and sale. Here the appellants were purchasing a considerable plant, for a particular purpose, and the suitableness of the property for that purpose was a prime consideration. The boiler was not an article the condition of which could be ascertained by inspection, no matter how carefully such inspection be made. To ascertain its condition it was necessary to put it through certain tests which could not be done without taking it into control, the expenditure of considerable time in the work, and the incur-

rence of some cost.  These facts bring the case within the rule of liability.  By the weight of authority, and in reason, the rule that a person who is voluntarily blind as to facts concerning which false representations are made cannot complain of the same, applies only where the person has a present opportunity and means of ascertaining the facts; it does not apply merely because it is possible for him to ascertain the facts.  *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102; *McMullen v. Rousseau*, 40 Wash. 497, 82 Pac. 883; *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *Stack v. Nolte*, 29 Wash. 188, 69 Pac. 753.

It remains to consider the amount of the offset that should be allowed the appellants.  As to this we think the verdict of the jury closely approximates the actual damage suffered by them, and we shall adopt their finding as the true amount to be so allowed.  Since the loss to the appellants occurred at the time of the sale, this sum should be deducted from the unpaid balance of the purchase price, and a recovery allowed the respondent for the amount remaining due after such sum is deducted, plus interest at the rate prescribed in the note given to evidence the indebtedness.  The attorney's fee allowed will be reduced from $150 to $75.  Costs of the court below to the plaintiff.  The appellants will recover their costs in this court.  The judgment is reversed, and the cause remanded with instructions to enter a decree accordingly.

DUNBAR, C. J., PARKER, MOUNT, and GOSE, JJ., concur.